**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Daniel Ojogwu,

Petitioner,

v.

John Ashcroft, Attorney General,
and Curtis J. Aljets, as District Director,
Immigration and Naturalization Service,
United States Department of Justice,

Respondents.

**MEMORANDUM OPINION AND ORDER**
Civil No. 02-210 ADM/SRN

---

Robert Dildine, Esq., Robert Dildine Law Office, Minneapolis, MN, appeared for and on behalf of Petitioner.

Gregory G. Brooker, Esq., Assistant United States Attorney, Minneapolis, MN, appeared for and on behalf of Respondents.

---

## I. INTRODUCTION

On February 7, 2002, the Motion for Temporary Restraining Order [Doc. No. 3] of Petitioner Daniel Ojogwu ("Ojogwu") was argued before the undersigned United States District Judge. Ojogwu's Motion raises the same issues contained in his Petition for Writ of Habeas Corpus [Doc. No. 1]. Ojogwu seeks the injunctive relief of immediate release from custody and/or an individualized bond determination before an independent fact finder.

## II. BACKGROUND

Ojogwu, a 42 year old native and citizen of Nigeria, entered the United States in June, 1981, as a non-immigrant visitor with permission to remain for a temporary period. Respondents' Appendix ("RA") at 2. The United States Immigration and Naturalization Service ("INS") granted

FILED FEB 26 [illegible]
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD FEB 26 20[illegible]
DEPUTY CLERK

Ojogwu "lawful permanent resident" status in January, 1991, under the Legalization Program set forth in Section 245A of the Immigration and Nationality Act ("INA"). RA, Ex. A ii.

During the 20 years Ojogwu has lived in the United States, he has established ties to the community. Ojogwu obtained a four-year college degree with additional technical training, and at the time of detention, Ojogwu was an associate television news producer for WCCO Television in Minneapolis. Petition for Writ of Habeas Corpus at 6-8. Ojogwu also has relatives who are citizens of the United States and live in this community. Id.

On August 29, 1996, and September 4, 1996, Ojogwu allegedly deposited two checks from a non-existent bank account into his personal bank account at a branch bank in Dakota County, Minnesota, which resulted in his obtaining cash totaling $1310. RA at 14. Ojogwu asserts the checks were drawn on a business account of his former employer, a business for which he had the authority to write checks. Pet. at 4. Ojogwu alleges the business failed and owed him money. Id. Ojogwu is also alleged to have attempted to deposit a third fraudulent check in the amount of $950 in a Ramsey County bank on September 5, 1996. RA at 17.

On March 21, 1997, Ojogwu pled guilty in Ramsey County District Court to a charge of attempted theft by check in violation of Minn. Stat. § 609.52. The Complaint alleged that on September 5, 1996, Ojogwu attempted to cash a check made out to himself in the amount of $950. RA at 14, 17. At the hearing, the Judge, apparently alluding to the Dakota County checks referenced in the Ramsey County Complaint, stated, "Well, it looks like it's $1,310.00 is what he is going to plead to." Dildine Aff. Ex. A at 3 (Ramsey County District Court Felony Plea Hearing Transcript). On May 22, 1997, the Ramsey County court stayed imposition of the sentence and Ojogwu was placed on probation for two and one half years, ordered to serve 14 days in jail, and required to pay

restitution of the $1310 he had received from the August 29 and September 4, 1996, check deposits and withdrawals in Dakota County. RA at 19.

Ojogwu later violated his probation by leaving Minnesota in September, 1997, to reside in California without first contacting his probation officer. RA at 20. Thus, Ojogwu's probation was revoked on July 3, 2000, and a felony sentence of one year and one day in the custody of the commissioner of corrections was imposed by the Ramsey County District Court. Execution of this sentence was stayed on the condition that Ojogwu serve 45 days in the county jail and make monthly restitution payments as previously ordered. Id.

On February 6, 2001, Ojogwu was convicted by guilty plea in Dakota County District Court of the felony offense[1] of theft by check in violation of Minn. Stat. § 609.52. The amended charge against Ojogwu in Dakota County claimed that on August 29 and September 4, 1996, Ojogwu obtained $1310 by intentionally deceiving a third party with false representation by depositing fraudulent checks. RA at 33-34. Ojogwu's motion to dismiss the Dakota County charge as double jeopardy was denied. RA at 34 (Dakota County District Court Plea and Sentencing Hearing Transcript at 4-5). The Dakota County District Court sentenced Ojogwu to 45 days time served, restitution of the $1310, and probation for two years. Pet. at 4; RA at 59.

On October 16, 2001, Ojogwu was taken into the custody of the INS. The INS issued a Notice to Appear charging Ojogwu with removability under 8 U.S.C. § 1227(a)(2)(A)(ii), as an alien who at any time after admission has been convicted of two crimes involving moral turpitude not

---

[1] Ojogwu alleges that the crimes are fraud crimes with a $10,000 threshold for being considered an aggravated felony under immigration laws. See INA § 101(a)(43)(M); 8 U.S.C. § 1101(a)(43)(M) ("The term aggravated felony means . . . (M) an offense that involves fraud or deceit in which the loss to the victim . . . exceeds $10,000").

arising out of a single scheme of criminal misconduct, and 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien who at any time after admission has been convicted of an aggravated felony as defined in the statute. RA, Ex. A, i-iv. The INS has detained Ojogwu without bond pursuant to 8 U.S.C. § 1226(c)(1)(B), which requires the Attorney General to take into custody any alien who is deportable by reason of having committed any offense covered in 8 U.S.C. § 1227(a)(2)(A), (B), (C), or (D).[2] On November 9, 2001, the Immigration Court Judge held that Ojogwu's two convictions constituted two crimes involving moral turpitude, and sustained the first charge of removability against Ojogwu. Hayden Aff., at ¶ 5. At another hearing on November 12, 2001, Ojogwu filed an application for cancellation of removal and asylum, withholding of removal, and relief under Article 3 of the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (the "CATOCIDTP"). RA at 64, 74; Hayden Aff. at ¶ 6. At a hearing on December 6, 2001, the Immigration Judge sustained the second charge of removability against Ojogwu relating to the aggravated felony, and denied Ojogwu's application for cancellation of removal and asylum, withholding of removal, and relief under Article 3 of the CATOCIDTP. RA at 82; Hayden Aff. at ¶ 7. Ojogwu has timely appealed asserting that the Ramsey and Dakota County convictions arose from a single scheme of criminal misconduct, and as such the order of deportation is not administratively final.[3] RA at 84-85.

Ojogwu currently remains in detention pursuant to 8 U.S.C. § 1226(c) during the pendency

---

[2] The statute gives the Attorney General discretion to release an alien who falls under this section only if the alien's release is necessary to provide protection to a witness, a potential witness, or a person cooperating with a criminal investigation, and then only if the alien will not pose a danger to the safety of others or flight risk. See 8 U.S.C. § 1226(c)(2). Save for these exceptions, detention is mandatory under the statute, even for aliens who are not flight risks and do not pose any threat to the public. Id. at § 1226(c)(1).

[3] Until there is a final removal order, Ojogwu's right to remain in the United States "is a matter of law, not grace." Kim v. Ziglar, 276 F.3d 523, 528 (9th Cir. 2002).

of his appeal and removal proceedings. On January 16, 2002, Ojogwu filed this Petition for Writ of Habeas Corpus challenging the constitutionality of the mandatory detention provision of § 1226(c) as applied to him, and a Motion for a Temporary Restraining Order seeking immediate release.

## III. DISCUSSION

Ojogwu argues that mandatory detention provisions of § 1226(c) violate the substantive and procedural due process requirements of the Fifth Amendment, which provides that "[n]o person shall be . . . deprived of life, liberty or property, without due process of law." U.S. Const. Amend. V.

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court considered detention of aliens under 8 U.S.C. § 1231(a)(6), which allows bail for aliens against whom a final removal order has been entered, once 90 days have elapsed since the entry of the order. Zadvydas reaffirmed the principle that aliens are entitled to protection under the Due Process Clause, and held that Congress' power with respect to aliens is subject to "important constitutional limitations." Zadvydas, 121 S.Ct. 2491, 2498-2501. The Court held that detention under § 1231(a)(6) was subject to a "reasonable time" limitation, because there is "no sufficiently strong special justification . . . for indefinite civil detention." Id. at 2495, 2499.

Following Zadvydas, the Third and Ninth Circuits have analyzed § 1226(c) in light of the Supreme Court's concerns regarding § 1231(a)(6), to determine whether the government has provided a sufficiently strong "special justification" to justify civil detention of a lawful permanent resident alien. See Kim v. Ziglar, 276 F.3d 523 (9th Cir. 2002); Patel v. Zemski, 275 F.3d 299 (3rd Cir. 2001). Both Circuits held that mandatory detention of aliens after they have been found subject to removal but who have not yet been ordered removed violates their due process rights unless they have the opportunity for an individualized bail hearing with reasonable promptness to determine

whether the alien poses a flight risk or danger to the community. Kim, 276 F.3d at 539; Patel, 275 F.3d at 314.

In Kim, a long-time lawful permanent resident was convicted of petty theft with priors and sentenced to three years imprisonment. The day after his release from state custody, the INS detained Kim pursuant to § 1226(c)(1)(B) on the ground that his second conviction qualified as an "aggravated felony" under § 1101(a)(43), which in turn made him removable under § 1227(a)(2)(A)(iii). Kim challenged the no-bail provision of § 1226(c) as applied to him on due process grounds. The Kim Court noted the obvious and important personal interest a lawful permanent resident has in his or her own liberty during the pendency of removal proceedings, because the alien is facing the prospect of long-term separation from family members living in the United States. Kim, 276 F.3d at 528-529. If the no-bail provision is valid, the Court stated, "he or she will be unable to see his or her son, daughter, husband, wife, father, or mother except in detention facilities during the pendency of the removal proceedings." Id. at 529.

The Kim Court first considered whether § 1226 was constitutional because decisions about aliens fall within Congress' plenary powers. The Court noted that "over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens." Id. at 530 (quoting Fiallo v. Bell, 430 U.S. 787, 792 (1977) (internal citation omitted)). It has long been recognized that Congress has a general power to detain aliens pursuant to seeking their removal from the United States. See id. (citing Wong Wing v. United States, 163 U.S. 228, 235 (1896)). However, as in Zadvydas, a sufficiently strong "special justification" is required to justify civil detention. See id.

The primary justifications advanced for mandatory no-bail detention under § 1226(c) are

(1) preventing criminal aliens from absconding so that they can be expeditiously removed as required by law, and (2) protecting public safety from the presence of potentially dangerous criminal aliens. Id. at 530-531. The Kim Court held that the risk of flight was not a persuasive justification, because (1) not all avenues of relief for persons subject to § 1226(c) are eliminated, (2) discretionary relief under former INA § 212(c) for aliens removable because of an aggravated felony remains available for aliens whose convictions were obtained through plea agreements, and (3) some aliens detained may be able to demonstrate that the conviction for which the INS seeks removal was not an aggravated felony. Id. at 531. The Court held that danger to the public is also an insufficient justification. Because civil detention must be "narrowly tailored to people who pose an unusual and well-defined danger to the public," the government has "the burden of proving that the particular individual meets the criteria for detention." Id. at 533. In so doing, a "full-blown adversary hearing" is required in which the Government must "convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person." Id. (quoting United States v. Salerno, 481 U.S. 739, 750 (1987)). However, § 1226(c) contains no provision for an individualized determination of dangerousness – bail is categorically never allowed. The Kim Court concluded that:

> Given the range of crimes qualifying as aggravated felonies, the government simply cannot show that § 1226(c) covers only aliens who pose an especially serious danger to the public. Moreover, the fact of a prior conviction alone, without any individualized consideration of the dangerousness of the underlying crime or of the individual's present condition, can be unreliable evidence of dangerousness. Not only may the crime itself have failed to indicate dangerousness; the conviction rendering the alien removable may also have occurred many years ago, and the alien may have led a law-abiding life since that time.

Kim, 276 F.3d at 534. The Court concluded that civil detention, without bail, of all lawful

permanent resident aliens who have been charged with removability was unjustified. Id.

The Kim Court next considered that § 1231(a)(6) currently allows bail to aliens subject to a final order of removal. Given that, the Court reasoned that it makes little sense to deny bail to those who are in removal proceedings, but have not been ordered removed. Id. at 535. As such, following the Zadvydas majority, the Kim Court concluded that there was not a "special justification" for no-bail civil detention sufficient to overcome a lawful permanent resident alien's liberty interest in an individualized determination of flight risk and dangerousness, and therefore § 1226(c) did not pass constitutional muster.[4] Id.

In Patel, a 55-year old native and citizen of India, and long-time lawful permanent resident, also challenged the constitutionality of § 1226(c). Patel was detained on the grounds that his plea of guilty and conviction for the offense of harboring an undocumented alien constituted an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(N), rendering him subject to removal under 8 U.S.C. § 1227(a)(2)(A)(iii). Patel, 275 F.3d at 303. Like Ojogwu, the Immigration Judge found Patel subject to mandatory detention, precluding an individualized determination into the necessity of detention. Id. at 304.

The Third Circuit in Patel emphasized that § 1226(c) does not allow discretion to consider whether criminal aliens pose any danger or flight risk during the pendency of their removal proceedings, that the Fifth Amendment entitles aliens to due process of law, and that the right implicated is a fundamental liberty right. Id. at 305, 307, 309. The Court then reiterated that due

---

[4] The Kim Court did not hold that a lawful permanent resident alien in removal proceedings has an absolute right to bail, but only that such an alien has a right to an individualized bail hearing with reasonable promptness, tailored to his or her particular circumstances, to determine whether the alien is a flight risk or a danger to the community. Kim, 276 F.3d at 538-539.

process requires an adequate and proportionate justification for detention that cannot be established without an individualized inquiry into the reasons for detention, noting that the process due even to excludable aliens requires an individual evaluation of flight risk and dangerousness. Id. at 311. The irrebuttable presumption created by § 1226(c) that all aliens subject to removal present a flight risk or danger is unjustified. See id.

> To deprive these individuals of their fundamental right to freedom furthers no government goal, while generating a considerable cost to the government, the alien, and the alien's family. The goals articulated by the government – to prevent aliens from absconding or endangering the community – only justify detention of those individuals who present such a risk.

Patel, 275 F.3d at 312. Consistent with the reasoning of the Kim Court, the Patel Court held that "mandatory detention of aliens after they have been found subject to removal but who have not yet been ordered removed . . . violates their due process rights." Id. at 314. The Court found that an individualized hearing to determine flight risk or danger to the community is required. Id.

Without controlling Eighth Circuit precedent on this issue, this Court adopts the logic of the Third and Ninth Circuits. Section 1226(c) is unconstitutional as applied to Ojogwu. Ojogwu has lived in America for over 20 years, and more than five years have passed since the commission of his theft by check offense during which time he has no additional conviction. He has received a four-year college degree, and held a job as an associate television news producer. Ojogwu has strong family ties to this community.

Just as the Ninth and Third Circuits found in Kim and Patel, Ojogwu presents facts creating a compelling case for an individualized hearing on the issues of dangerousness and risk of flight. Ojogwu disputes that his convictions constitute two separate crimes not from a single scheme, and that they constitute an "aggravated felony." Ojogwu's appeal on these issues will remain unresolved.

Due process requires that Ojogwu, as a lawful permanent resident, receive the opportunity for an individualized bond hearing at which he can attempt to show that he does not pose a flight risk or danger to the community. Ojogwu has been detained since October 16, 2001; the time period within which a "reasonably prompt" hearing could occur has expired. Therefore, Ojogwu is to receive an individualized bond hearing before an independent fact finder within 30 days of the issuance of this Order, and will remain in custody during the interim.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Ojogwu's Motion for Temporary Restraining Order [Doc. No. 3] and Writ of Habeas Corpus [Doc. No. 1] are **PROVISIONALLY GRANTED TO REQUIRE AN INDIVIDUALIZED BOND HEARING WITHIN 30 DAYS**, and
2. In light of the required bond hearing, Ojogwu's Motion for Temporary Restraining Order [Doc. No. 3] and Writ of Habeas Corpus [Doc. No. 1] seeking immediate release are **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date: February 26, 2002

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.